involved. The district court's determination with respect to the amount of money involved is a finding of fact and thus is reviewed for clear error. A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 906 (6th Cir.2000) (citation and quotation marks omitted).

Here, the district court aggregated the amount of money received by McGuire, using the amount of fraudulent disbursements paid to W.G. Williams as a baseline. *See United States v. Owens*, 159 F.3d 221 (6th Cir. 1998); *United States v. Ghosheh*, 143 F.3d 432 (6th Cir. 1998); *United States v. Cole*, 988 F.2d 681 (7th Cir. 1993). Because the district court will need to recalculate McGuire's sentence on remand as it used the money-laundering guideline to group the counts, we need not address this issue.

### III. CONCLUSION

Accordingly, we **AFFIRM** McGahee's conviction and sentence, we **AFFIRM** McGuire's conviction and sentence as they relate to the conspiracy and embezzlement charges, and we **REVERSE** McGuire's money-laundering conviction and **REMAND** for resentencing.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0213P (6th Cir.)
File Name: 01a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

MARILYN HOUSE MCGAHEE
(99-6109); DOUGLAS
MCGUIRE (99-6434),
    *Defendants-Appellants.*

Nos. 99-6109/6434

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20273—Julia S. Gibbons, District Judge.

Argued: May 4, 2001

Decided and Filed: July 10, 2001

Before: NORRIS and COLE, Circuit Judges;
HOLSCHUH, District Judge.[*]

_____

[*]The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Linda Parson Khumalo, Memphis, Tennessee, Randall W. Pierce, WAMPLER & PIERCE, Memphis, Tennessee, for Appellants.   Linda Nettles Harris, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.   **ON BRIEF:** Linda Parson Khumalo, Memphis, Tennessee, Randall W. Pierce, WAMPLER & PIERCE, Memphis, Tennessee, for Appellants.   Linda Nettles Harris, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

R. GUY COLE, JR., Circuit Judge. Defendants-Appellants Marilyn House McGahee and Douglas McGuire appeal their convictions and sentences for conspiracy to defraud the United States Government, as well as multiple counts of embezzling funds of the United States arising from McGahee's distribution of Housing and Urban Development ("HUD") monies to McGuire.   McGuire also appeals his conviction on multiple counts of money laundering. Defendants raise numerous assignments of error on appeal, including the insufficiency of the evidence to support appellants' convictions for conspiracy and theft, and McGuire's convictions on money-laundering charges; failure to properly instruct the jury on McGahee's theory of the case; and sentencing errors.   For the reasons that follow, we AFFIRM McGahee's conviction and sentence in every regard, we AFFIRM McGuire's conviction and sentence as they relate to the conspiracy and embezzlement charges, and we REVERSE McGuire's money-laundering conviction on grounds of insufficient evidence and REMAND for resentencing.

McGuire is correct insofar as there exists a circuit split over the timing of the "imposition" of the judgment and sentence under Fed. R. Crim. P. 35(c).   *See United States v. Gonzalez*, 163 F.3d 255, 263 (5th Cir. 1999) (outlining the circuit split and explaining how the Second, Fourth, Tenth, and Fifth Circuits recognize imposition upon oral announcement, and the First and Seventh upon journal entry) (citing *United States v. Layman*, 116 F.3d 105, 108 (4th Cir. 1997) (holding that imposition occurs at time of oral pronouncement); *United States v. Abreu-Cabrera*, 64 F.3d 67, 74 (2d Cir. 1995) (same); *United States v. Townsend*, 33 F.3d 1230, 1231 (10th Cir. 1994) (same); *United States v. Clay*, 37 F.3d 338, 340 (7th Cir. 1994) (holding that imposition occurs at time of entry of judgment); *United States v. Morillo*, 8 F.3d 864, 869 (1st Cir. 1993) (same)).   In any event, we decline to address the question of whether imposition occurs at the time of oral pronouncement or at the time of judgment entry, as that issue is inapposite to the one before us.

Here, the sentencing court made an oral pronouncement of McGuire's final sentence on October 1, 1999. Final judgment was entered on October 13, 1999, and there was no change in sentence from the court's oral pronouncement to its entry of judgment.   Although McGuire tries to characterize the court's July 30, 1999, ruling as an oral pronouncement of McGuire's final sentence, it is unmistakably clear that the sentence set forth from the bench on July 30 was tentative and that the court was reserving imposition of a final sentence for a later date, after having an opportunity to resolve the dispute over whether or not to include the years 1992 and 1993 in its sentence calculation.

Thus, we find that neither the district court's October 1, 1999, oral pronouncement, nor its October 13, 1999, entry of judgment were attempts to change McGuire's sentence. Accordingly, this assignment of error is without merit.

### 4. Enhancement

Finally, McGuire argues that the district court improperly enhanced his sentence based upon the amount of money

the original PSR did not include the years 1992 and 1993 in calculating the money-laundering guideline range, the amended PSR recommended including those years. During the July 30, 1999, hearing, the district court stated that although it was inclined to disagree with the reasoning of the amended PSR, final sentencing would be postponed in order to allow the parties to develop additional proof as to whether 1992 and 1993 should be included in the sentence calculation.

McGuire submitted additional position papers and the Government responded accordingly. The district court then held a second sentencing hearing on October 1, 1999, and found that there was sufficient evidence to show that the conspiracy began in 1992. Accordingly, the district court included 1992 and 1993 in its calculation of McGuire's sentence, adopted the reasoning of the PSR, and set McGuire's offense level at 28, which put McGuire in a sentencing range of 78 to 97 months. The district court sentenced McGuire to 78 months' imprisonment and three years of supervised release. On October 13, 1999, the court entered final judgment.

McGuire argues that the district court did not have jurisdiction to change his sentence, asserting that the sentence was "imposed" under Fed. R. Crim. P. 35(c)[2] when the district court pronounced his sentence from the bench on July 30, 1999, not when it entered his sentence on October 13, 1999. McGuire argues that because the district court failed to resentence him within seven days of the July 30, 1999, pronouncement, it was without jurisdiction to enter a different sentence on October 13, 1999. We disagree.

---

[2]Rule 35(c) provides, "The court, *acting within 7 days after the imposition of sentence,* may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(c) (emphasis added). McGuire's counsel frames this as a Rule 35(c) issue even though the issue is not correcting a "sentence that was imposed as a result of arithmetical, technical, or other clear error." The issue here is sufficiently analogous to aid in our decision of the jurisdictional question.

## I. BACKGROUND

The City of Memphis Department of Housing and Community Development ("HCD") receives federal funds from HUD under the Community Development Block Grant ("CDBG") program. One of the HCD programs -- the Rebuild Program ("Rebuild") -- provides funds to low- and moderate-income homeowners whose existing houses have been deemed unsafe for continued occupancy. Pursuant to the program, the homeowners apply to HCD for a grant, and the City then conducts a detailed inspection of the property to determine whether the structure can be rehabilitated with federal funds, or whether complete demolition and new construction are warranted.

Rebuild consisted of one manager, Andrew Harvey; one supervisor, McGahee; three housing specialists; a financial analyst; and a clerk. The City contracted with Lawyers' Title Insurance Corporation ("LTIC") to act as the closing and disbursing agent for HCD. After HCD approved a property for funding, Rebuild would then contact the owners, explain the program, and complete the necessary forms and documents should the owners wish to participate. HCD set the prices for construction, thus eliminating the need to take bids from contractors for each property and expediting the rehabilitation process. Contractors were invited to place their names on a rotating list with the knowledge that HCD would authorize payment only in the amounts that were set.

HCD controlled the funds and would make disbursements to LTIC once an agreement between the homeowner and contractor was in place. The contractor was authorized to receive two payments: the first payment equaled 60% of the contract price and was disbursed when half of the work was completed, and the second payment was the remainder of the contract price disbursed upon completion of the project. Before releasing the first payment, a Rebuild specialist would conduct an on-site inspection of the property and then issue a draw request to McGahee, who would, in turn, approve payment and forward the request to LTIC. The contractor

was required to appear at the LTIC office in person and sign a document certifying that the work had been completed. LTIC would issue the check to the contractor.

Two Rebuild specialists, Myra Hampton and Van Ford, began to notice irregularities in some of the contracting and disbursement procedures. They took their concerns to Harvey, and eventually, improprieties in the program were brought to the attention of the HCD Director. The matter was referred to law enforcement authorities, and an investigation by the Memphis Police Department ensued. As part of this investigation, a site inspection of various Rebuild properties was made in July 1995, and it was discovered that McGahee had approved numerous unauthorized disbursements to McGuire, who owned and operated W. G. Williams Enterprises.

The Internal Revenue Service began a criminal investigation of these disbursements, which the IRS believed to be fraudulent. The IRS discovered that McGahee disbursed $308,148 through LTIC to McGuire as payment for work on ten properties, only one of which had been completed halfway. The investigation also revealed that McGuire held an account at National Bank of Commerce ("NBC"), under the name "Douglas J. McGuire, d/b/a W. G. Williams Enterprises." All of the deposits made into this account were drafts from the escrow accounts at LTIC. In 1992, McGuire received $450,762; in 1993, he received $282,392.74; in 1994, he received $554,228.66; and in 1995, he received $275,990.83. The total amount of deposits from Rebuild via LTIC was $1,563,374.23. McGuire used $735,572.72 for Rebuild projects, but converted $827,801.51 to his own use. Of these funds, he wrote checks made out to himself for $439,210; checks made out to "cash" for $183,131; and checks for his mortgage for $14,665.25. The remainder of the converted funds consisted of checks drawn on the account to family members and for other, miscellaneous items.

McGahee and McGuire were indicted in Count 1 for conspiracy to embezzle, steal, and purloin money of HUD, a

standard. *United States v. Dobish*, 102 F.3d 760, 762-63 (6th Cir. 1996). Attribution is determined under U.S.S.G. § 1B1.3(a), which states that relevant conduct includes: "(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . ." U.S.S.G. § 1B1.3(a)(1)(A) & (B). The crimes must be related only by a preponderance of the evidence to be relevant conduct for the purpose of sentencing. *United States v. Dunlap*, 209 F.3d 472, 477 n.10 (6th Cir. 2000).

Here, the district court found that the total amount of loss was $460,791.85 based on McGahee's wrongful release of funds to McGuire. The court's calculation included amounts at issue in uncharged offenses and counts for which McGahee had been acquitted, as well as the funds wrongfully released to J.B. Trotter, d/b/a Jefferson Brothers & Associates. Although McGahee had been acquitted of several counts, the court found that there was at least a preponderance of evidence to support those charges. Based on the information summarized in the charts on the amount of money disbursed compared to the amount of work done, we find that the district court did not abuse its discretion in finding by a preponderance of the evidence that she had disbursed $460,791.85 to contractors who had not completed even half of the work. Accordingly, the court did not err in determining the amount of loss attributable to McGahee.

### 3. Jurisdiction

McGuire challenges the district court's jurisdiction to change his sentence after having orally pronounced a tentative sentence from the bench on July 30, 1999. The district court had set a tentative sentence for McGuire based on offense conduct occurring after 1993. The district court calculated McGuire's offense level to be 27, which put him in a guideline range of 70 to 87 months' imprisonment. Although

departure generally is not reviewable on appeal, *see United States v. Landers*, 39 F.3d 643, 649 (6th Cir. 1994) ("Ordinarily, a sentence conforming to the range mandated by the guidelines cannot be appealed simply because the trial judge refused to award a downward departure."). Only under circumstances where the district court incorrectly believed that it lacked discretion to depart downward may we review a district court's denial of a downward departure. *See United States v. Coleman*, 188 F.3d 354, 357 (6th Cir. 1999) (en banc) ("An appellate court may only review a denial of a motion for a downward departure if the district court judge incorrectly believed that she lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines.") (internal quotation marks and alteration omitted). We recognize that a sentencing judge has no duty "to state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so." *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995). As we recently emphasized:

> [A]n appellate court should be reluctant to treat as ambiguous a ruling which does not affirmatively state that the judge knew he could depart downward but failed to do so. We should therefore assume that a district court is exercising its proper discretion when it concludes that a downward departure is unwarranted.

*United States v. Owusu*, 199 F.3d 329, 349 (6th Cir. 2000) (internal quotation marks and citations omitted).

Here, the district court expressly recognized that it had the authority to depart downward under § 5K2.10 but declined to do so because of its conclusion that under the facts of this case, a downward departure was not warranted. Accordingly, this issue is not properly before us on appeal.

### 2.  Amount of Loss

McGahee argues that the district court erred in its calculation of the amount of loss. The district court's calculation of loss is reviewed under a clearly erroneous

Department of the United States, and theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 371. Counts 2 to 23 charged McGahee and McGuire with embezzling HUD money in excess of $1,000 in violation of 18 U.S.C. § 641(a)(2). McGuire was also charged with twenty-five counts of money laundering. Counts 24 to 33 charged that McGuire conducted a financial transaction with the proceeds of an unlawful activity with the intent of promoting that unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i). This is known as the "promotion prong" of the money-laundering statute. Counts 34 to 48 charged that McGuire conducted a financial transaction with the proceeds of an unlawful activity, knowing that the transaction was designed, in whole or in part, to disguise and conceal the source of the funds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). This is known as the "concealment prong" of the statute.

A jury trial was held in the United States District Court for the Western District of Tennessee from November 2 to 16, 1998. At the close of the Government's case on November 10, and again at the close of all the evidence on November 12, both defendants moved for judgments of acquittal pursuant to Fed. R. Crim P. 29, which the district court denied. The jury returned guilty verdicts for both defendants on the conspiracy charge and fifteen of the embezzlement charges. McGuire was found guilty of two counts of the promotion prong and nine counts of the concealment prong of money laundering.

The United States Probation Office prepared a presentence investigation report ("PSR") for both defendants, and a sentencing hearing took place on July 30, 1999. McGahee was sentenced to 33 months' imprisonment, three years of supervised release, and ordered to make restitution of $122,881.86. On July 30, 1999, the district judge commented that she was inclined to omit the amount of funds diverted in 1992 and 1993, as suggested by McGuire's position paper filed in response to the PSR on May 12, 1999, and orally pronounced a tentative sentence of 70 months' imprisonment. On October 1, 1999, the court reconvened for further

sentencing. The court then accepted the PSR as originally written and sentenced McGuire to 78 months' imprisonment, three years supervised release, and ordered payment of $155,306.26 in restitution.

Defendants raise numerous assignments of error on appeal, including: (1) the insufficiency of evidence to support their embezzlement and conspiracy convictions; (2) the insufficiency of evidence to support McGuire's money-laundering conviction; (3) reversible error for failure to charge the jury with McGahee's theory of the case; (4) abuse of discretion for failure to grant McGahee a downward departure; (5) miscalculation of the amount of loss attributable to McGahee; (6) lack of jurisdiction to resentence McGuire after the original sentence had been pronounced; and (7) improper enhancement of McGuire's sentence based on the amount of money involved. With the exception McGuire's claim of insufficient evidence to support his conviction of money laundering, we hold that all other assignments of error are without merit. Accordingly, we **AFFIRM** McGahee's conviction and sentence in every regard, we **AFFIRM** McGuire's conviction and sentence as they relate to the conspiracy and embezzlement charges, and we **REVERSE** McGuire's money- laundering conviction on grounds of insufficient evidence and **REMAND** for resentencing.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Our standard of review for sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. White*, 932 F.2d 588 (6th Cir. 1991) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give the Government the benefit of all reasonable inferences and refrain from independently weighing the evidence. *United States v. Welch*, 97 F.3d 142, 148 (6th Cir 1996). Although "more than just a scintilla" of

a defendant fails to object at trial, as McGahee failed to do, our review is limited to plain error. Fed. R. Crim. P. 30; *United States v. Thomas*, 11 F.3d 620, 629 (6th Cir. 1993).

Here, McGahee points to nothing in the record which would show that she was denied the opportunity to present a defense or that the court abused its discretion in excluding certain evidence. In addition, the court's jury instructions adequately described the intent element such that the jury could have evaluated McGahee's defense:

You have heard me use the words "knowingly" and "willfully" in discussing the intent requirements for this offense.

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. . . .

An act is done "willfully" if done voluntarily and intentionally, and with specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

This instruction adequately conveyed McGahee's theory of the case. Accordingly, this assignment of error also is without merit.

### C. SENTENCING ISSUES

### 1. Victim Contribution

McGahee argues that Harvey orally modified the contracts, and therefore, HCD itself committed some wrongdoing. For this reason, McGahee argues that she was entitled to a downward departure under § 5K2.10 of the sentencing guidelines, which deals with a victim's conduct, and that the district court erred in denying her one. Although we review a district court's decision to grant a downward departure for an abuse of discretion, *see Koon v. United States*, 518 U.S. 81, 91 (1996), a district court's refusal to grant a downward

Accordingly, we AFFIRM McGahee's and McGuire's embezzlement and conspiracy convictions.

## B. Jury Charge

McGahee argues that the district court erred in failing to give a jury instruction on her theory of the case: that the City of Memphis controlled the contract price; that the contractors did not have enough "float money" to complete the projects; that the City knew of the problem and made oral modifications in the contracts; and that McGahee was told to solve the problem, but was not given a concrete plan to do so. McGahee complains that she was not allowed to present certain evidence at trial that would support her theory and that, to the extent the court did admit such evidence, the judge did not give an appropriate instruction.

We review the district court's decision to exclude evidence for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir.). A district court abuses its discretion if its decision is based on an error of law or a clearly erroneous factual finding. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996); *United States v. Barber*, 119 F.3d 276, 283 (4th Cir. 1997)). To determine if McGahee was deprived of a fair trial, we look to the materiality of the defense and excluded evidence. *See United States v. Burge*, 990 F.2d 244, 248 (6th Cir. 1992) (quoting *Rosario v. Kuhl*, 839 F.2d 918, 925 (2nd Cir. 1988)). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)). Finally, a district court's refusal to provide an instruction constitutes reversible error "only if that instruction is: (1) a correct statement of the law; (2) not substantially covered by the charge actually delivered to the jury; and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991) (citation omitted). When

evidence is required, *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995), the verdict can be based entirely on circumstantial evidence and need not completely rule out other possibilities, *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989).

### 1. Money Laundering

Counts 24 to 33 charged McGuire with money laundering to promote illicit activity (promotional money laundering), and Counts 35 to 48 charged him with money laundering to conceal the origin of the funds (concealment money laundering). Having been found guilty of two counts of promotional money laundering and nine counts of concealment money laundering, McGuire asserts that there was insufficient evidence to prove that he committed either type of money laundering. We agree.

In order to make its case for promotional money laundering, the Government needed to bring forth evidence that McGuire: "(1) conducted a financial transaction that involved the proceeds of unlawful activity; (2) knew the property involved was proceeds of unlawful activity; and (3) intended to promote that unlawful activity." *United States v. King*, 169 F.3d 1035, 1039 (6th Cir. 1999) (quoting *United States v. Haun*, 90 F.3d 1096, 1100 (6th Cir. 1992)). The concealment version has the first two elements in common with the promotion version. The distinguishing feature of the concealment prong is that the Government needs to prove that the defendant knew the transaction was designed in whole or in part to conceal and disguise the nature, source, ownership, or control of the proceeds of the specified unlawful activity. *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000).

The counts of the promotional money laundering allege that McGuire had two checks drawn on his NBC account and sent to Kimberly Clark Credit Union ("Kimberly Clark"). Lesa Williams, an employee of Kimberly Clark, testified that she received a W.G. Enterprises check drawn on the NBC on June 5, 1995, for $579.79, and July 7, 1995, for $1,313.79. These checks were applied to McGuire's loans held by Kimberly

Clark, including the mortgage on McGuire's residence, a personal loan, and a car loan. The Government's theory of the promotion is that, since McGuire also used his residence as the business office of W.G. Enterprises, house payments furthered the criminal activity perpetrated through W.G. Enterprises. Further, the Government argues that the business existed in large part to facilitate the conversion of HUD funds to his use and that at the relevant times McGuire was not conducting any legitimate business.

Paying for personal goods, alone, is not sufficient to establish that funds were used to promote an illegal activity, however. The Government's theory that the payments supported the business and that the business existed, at least in part, to collect illegal funds is not sound. Although this Court has not decided the issue, other circuits have rejected the argument that general business expenditures, if the business is used to defraud, promotes crime. *See United States v. Brown*, 186 F.3d 661, 669-70 (5th Cir. 1999) (finding that above-board payments on business expenses for an automobile dealership that engages in fraudulent activity does not support the promotion prong). To further a criminal activity, the transaction must be explicitly connected to the mechanism of the crime. *See id.* Furthermore, the Government has to demonstrate that connection. *United States v. Jackson*, 935 F.2d 832, 840-42 (7th Cir. 1991) (finding that beepers were not necessary to the defendant's legitimate business operation and played an important role in the drug trafficking scheme and therefore promoted the crime; but that cell phones, even though they might have been used in drug trafficking, could also be a legitimate business expense and therefore did not promote the crime).

The Government has not made this connection. Although McGuire needed to pay his home mortgage to continue his enterprise, whether legal or illegal, he paid his mortgage primarily to maintain his family's shelter. McGuire's home did not play an integral part in the embezzlement scheme. Using his home address as his business address was merely a convenience. Paying his mortgage was not only a legitimate

accounts, McGahee told Hampton not to go to Harvey again with complaints. Because a reasonable jury could have concluded that McGahee acted willfully and knowingly, we find that the Government set forth sufficient evidence from which a reasonable jury could conclude that both McGahee and McGuire embezzled HUD funds.

McGahee and McGuire also argue that there was insufficient evidence of a conspiracy to embezzle. To prove the existence of a conspiracy, the Government must show: (1) that the conspiracy was willfully formed and was existing at or about the time alleged; (2) that the defendant willfully became a member of the conspiracy; (3) that one of the conspirators knowingly committed an overt act; and (4) that the overt act was knowingly done in furtherance of the conspiracy. *United States v. Miller*, 161 F.3d 977, 985 (6th Cir. 1998). Although there must be firm evidence of at least tacit coordination, *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990), proof of a formal agreement is not necessary, *United States v. Barger*, 931 F.2d 359, 369 (6th Cir. 1991).

Here, the evidence establishes that McGuire and McGahee were willing participants in a conspiracy to embezzle HUD funds. McGahee willfully authorized funds to be released, and McGuire willfully took them and used them for personal benefit. There is also evidence of the special relationship between the two. McGahee and McGuire grew up together and were close, and there was evidence, albeit disputed, of a romantic relationship. The expedited payment schedule was not used for other contractors, but only for McGuire. McGahee had a rubber stamp of his signature in her desk so she could authorize all the paperwork for him. Finally, some of the checks drawn from McGuire's business account show McGahee's name on the "memo line," indicating possible payment for her role.

In light of the evidence that McGahee and McGuire committed overt acts in furtherance of the conspiracy, we hold that a reasonable jury could find that they willingly conspired to embezzle money from the Government.

work.  Defendants claim that because they acted legitimately under this "unofficial policy," the Government failed to establish the fourth element of embezzlement, *i.e.*, that they acted willfully and knowingly.

McGuire did not raise this defense at trial, which he now designates as entrapment by estoppel, nor did he request a jury instruction on this defense.  Thus, he has waived the issue on appeal, and we will not reverse absent a miscarriage of justice.  *United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir. 1996).  The evidence established that McGuire took the receipt of HUD funds and converted them to his personal use.  Regardless of whether he knew about the written disbursement policy, he knew that he was accepting HUD money that was designated for the rehabilitation or construction of HUD-approved properties and using it for personal purposes.  Certainly, a reasonable jury could find that he took HUD funds with no intention of using such monies for a lawful purpose, which is enough to satisfy the fourth element.

McGahee's primary defense and theory of the case was that Harvey's oral modifications nullified any possible intent.  While it is not enough for the Government to have proven that McGahee disbursed the funds to McGuire in a manner not specified by the Rebuild guidelines if she did not believe her behavior constituted wrongful conversion, *see Morissette v. United States*, 342 U.S. 246, 276 (1952), we will not second-guess the jury's assessment of McGahee's credibility as a witness.  A reasonable jury could have concluded, from her testimony and the other evidence presented, that McGahee's intentions were to steal money.  She did not treat all the accounts the same way, but employed this method of distribution only as to McGuire.  She told Hampton and Ford that sometimes there were opportunities to receive kickbacks from the contractors.  Further, contrary to customary procedure, McGahee dispensed the checks herself instead of instructing case managers to do so, and even hid their files involving McGuire from them.  Upon learning that Hampton approached Harvey to discuss the discrepancies in the escrow

business expense, it was a necessary personal expense.  Thus, the reasonable conclusion is not that McGuire made the payment with the intent to promote the embezzlement, but rather with the intent to sustain his personal living quarters.

With regard to the concealment prong, the Government asserts that when McGuire wrote checks on the business account or converted the money to cash, he was concealing the fact that he illegally obtained the funds from HUD and that the funds were earmarked for certain properties.  The Government maintains that when the money was withdrawn from McGuire's business account, it was "laundered" of its association with those properties.  McGuire argues that his actions did not constitute concealment as Congress intended.

The Tenth Circuit has recognized that a certain type of evidence is required in order for the Government to prove the element of intent to conceal in a money-laundering charge, including:

> statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of criminals.

*United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475-76 (10th Cir. 1994) (citations omitted).  Every purchase or financial transaction conducted with illegal funds does not constitute money laundering.  As *Garcia-Emanuel* explained:

> The statute speaks in terms of transactions that are "designed" to conceal the proceeds of unlawful activity.  Whenever a drug dealer uses his profits to acquire any asset -- whether a house, a car, a horse, or a television -- a jury could reasonably suspect that on some level he is motivated by a desire to convert his cash into a more legitimate form.  The requirement that the transaction be

"designed" to conceal, however, requires more than a trivial motivation to conceal.

14 F.3d at 1474.

We recently adopted the analysis and holding of *Garcia-Emanuel* in *United States v. Marshall*, 2001 WL 418032 (6th Cir. April 25, 2001).[1] We stated in *Marshall*, "Section 1956 does not make money laundering a continuing offense. . . . [T]he fact that the source of the money used to buy [the goods] constituted a separate violation under § 1957 has no bearing on whether the latter purchases satisfied the intent prong of § 1956(a)(1)(B)(i)." 2001 WL 418032, at *13.

Here, McGuire's conduct does not evidence a design to conceal the proceeds of illegal activity. The checks drawn on the account were not intended to conceal how he got the funds, but merely to convert them to liquid assets. Nor were the transactions designed to create the appearance of legitimate wealth. The funds were transmitted in a direct, ordinary, and open manner. Although the jury found that the drafts concealed the source for purposes of his future use of those particular funds, future financial transactions are immaterial to McGuire's intent at the time of the financial transaction under review. *See Marshall*, 14 F.3d at 1474 ("Merely engaging in a transaction with money whose nature has been concealed through other means is not in itself a crime."). Diverting the funds were part and parcel of the fraud and theft, and were not a separate act completed after the crime, as required under the money-laundering statute.

---

[1] In *Marshall*, the defendant, a courier who refilled cash in ATMs, stole $60,000 from one of the ATMs. He was convicted of, *inter alia*, concealment money laundering in violation of § 1956(a)(1)(B)(i), based on his purchase of a Rolex watch, a diamond tennis bracelet, and expensive wine. In addition to the list of considerations, we also adopted the rule of *Unites States v. Sanders*, 928 F.2d 940 (10th Cir. 1991), that "the government must produce more evidence than the simple fact of a retail purchase using illegally obtained money in order to prove the 'intent to disguise' element of § 1956(a)(1)(B)(i)." *Marshall,* 2001 WL 418032, at *11.

*United States v. Mankarious*, 151 F.3d 694, 703 (7th Cir. 1988); *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997). Thus, we find that there was insufficient evidence to support McGuire's money-laundering conviction.

### 2. Embezzlement and Conspiracy

Both McGahee and McGuire challenge their embezzlement and conspiracy convictions on grounds that the Government failed to present sufficient evidence from which a reasonable jury could conclude that they conspired to, and did, embezzle Government funds. To establish embezzlement, the Government must prove that: (1) the defendant embezzled, stole, purloined or converted to his or her own use money or a thing of value; (2) the money or thing of value was a money or a thing of the United States or one of its departments or agencies; (3) the money or thing of value was valued at more than $1,000.00; and (4) the defendant acted willfully and knowingly. *United States v. Forman*, 180 F.3d 766 (6th Cir. 1999).

The Government unquestionably set forth evidence sufficient to satisfy the first three elements of the test. The most inculpatory items presented are the charts, set forth in the PSR, which were created by the Government during its investigation and graphically illustrate how the money flowed. McGahee disbursed a total of $308,148.12 to McGuire from August 1994 to May 1995 for nine different properties, on which little to no work had been performed. This disbursement was in direct contravention of the written policy that half of the work had to be completed before 60% of the funds could be disbursed, with the remainder of the funds delivered upon completion. McGahee admitted that she released the funds without inspecting the properties to check the progress of construction. IRS audits indicate that McGuire then converted the funds to his personal use.

The question of intent, however, requires closer scrutiny. Defendants claim that Harvey orally modified Rebuild's disbursement policy so as to put in place an "unofficial policy" of disbursing funds prior to the completion of any