NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0348n.06

No. 23-5585

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 08, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| WYNDE COLLINS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. For a 10% fee, Wynde Collins helped low-income borrowers with poor credit obtain bank loans using forged documents. A jury convicted her of bank-fraud and money-laundering offenses. Collins raises three issues on appeal. First, she claims that the government introduced insufficient evidence to prove that she conspired to engage in money laundering. Second, she claims that an expert witness impermissibly testified about the money-laundering statute's legal requirements. Third, she claims that the district court miscalculated her guidelines range. But overwhelming evidence supported her money-laundering conviction. That fact also shows that the claimed evidentiary error did not harm her. And the district court properly calculated her guidelines range under our controlling precedent. So we affirm.

I

Collins engaged in large-scale bank fraud with the help of Alvin Johnson, a friend she met in the 1990s while both lived in Michigan. All told, she tried to obtain almost 60 fraudulent loans totaling $2,166,242.32 from several financial institutions.

The fraud began in 2014 after Johnson moved to Atlanta and started a "car broker" business. Johnson Tr., R.163, PageID 3890. As an unlicensed broker, Johnson connected car buyers and dealers. He would work with buyers "from A to Z" by finding them a car at a dealer's auction and then helping them secure financing to pay for it. *Id.*, PageID 3891. If buyers had poor credit scores, Johnson would try "improving their credit" through such tactics as adding them to the credit cards of those with good credit scores. *Id.*, PageID 3898–901.

Johnson primarily used Navy Federal Credit Union to obtain car loans for borrowers. This credit union had a "simple" process without much "paperwork to approve the loan." *Id.*, PageID 3908. He would occasionally use other credit unions, but they required more documentation (such as a buyer's order for the car). Johnson eventually transitioned to obtaining fraudulent car loans for customers who desired cash rather than cars. He would fill out a loan application using the information from a car that he found on the internet, but the customer would take the loan without buying the car. Johnson even opened sham car dealerships and bank accounts to facilitate these loans. The fake collateral (the identified car) often allowed the borrowers to receive a lower interest rate as "compared to an un-collateralized loan." Hollern Tr., R.195, PageID 5676. Johnson took a 10% fee off the top for every loan that he secured for borrowers.

The same year that he started the fraud, Johnson reconnected with Collins. She had also moved to Atlanta from Michigan. After he told her about his car-loan scheme, she regularly referred borrowers to him through 2017. Collins provided Johnson with all the personal

information that he needed to process her borrowers' loans. If Collins's customers did not have a job, she told Johnson to identify their employer as one of several fake businesses she had created. Johnson and Collins each attempted to take 10% fees for these loans.

Collins later branched out on her own. She began to personally submit fraudulent loan applications for borrowers. These applications included false car information, false employers, false income, and false pay stubs. Of most note, Collins helped secure many loans for Brooke Hensley and her family. Hensley, who was a young drug dealer, had learned "through a mutual friend" that Collins could obtain loans for her. Hensley Tr., R.164, PageID 4172–73. Collins requested Hensley's personal information and the personal information of her family members (many without their knowledge). She then submitted several car-loan applications on their behalf, typically including false employment and income information. She also provided Hensley with fake pay stubs and tax returns for a fee. And she helped Hensley obtain a $424,100 mortgage. To make the downpayment for this home loan, Hensley used some of the smaller car loans that Collins had helped her fraudulently secure.

This fraud scheme harmed several low-income borrowers. Some came to Collins in financial distress while struggling through a divorce or other personal difficulties. They typically wanted personal or business loans. But Collins told them to apply for a car loan or simply applied for that type of loan on their behalf without telling them. They received only a portion of these car loans because Collins took her 10% cut. The loans also triggered higher interest rates when the borrowers could not produce the title for the purported car. Some borrowers later had to file for bankruptcy. Others had their credit ruined.

Investigators discovered Collins's fraud while investigating Hensley for drug trafficking. The government charged Collins with one count of conspiring with Johnson and Hensley to

3

commit bank fraud, *see* 18 U.S.C. § 1349, six counts of bank fraud for six of the loans she obtained for Hensley, *see id.* § 1344, and one count of conspiring with Johnson and Hensley to commit money laundering, *see id.* § 1956(h). Johnson and Hensley pleaded guilty to similar offenses. Collins went to trial. The district court held a 12-day trial at which Johnson, Hensley, and many other witnesses testified against Collins. The jury convicted her of all eight counts. The district court sentenced her to 121 months' imprisonment.

II

Collins raises sufficiency, evidentiary, and sentencing challenges. None has merit.

A. Sufficiency Challenge

Collins first argues that the government did not present enough evidence to allow a reasonable jury to convict her of conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). Any defendant who raises a sufficiency-of-the-evidence challenge faces a tall task. *See United States v. Hinojosa*, 67 F.4th 334, 340 (6th Cir. 2023). After resolving all evidentiary conflicts in the government's favor, the defendant "must show that no 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). That said, the government argues that Collins must meet an even more demanding standard because she failed to raise this sufficiency challenge in the district court. Given this oversight, the government says, Collins must establish that the "record is so 'devoid of evidence'" that we would commit a "manifest miscarriage of justice" if we upheld her conviction. *United States v. Dotson*, 2022 WL 6973397, at *9 (6th Cir. Oct. 12, 2022) (quoting *United States v. Woods*, 14 F.4th 544, 555 (6th Cir. 2021)). In the end, we need not choose between these competing standards of review because Collins's claim fails under either one.

4

The money-laundering statute punishes "[a]ny person who conspires to commit" a money-laundering offense. 18 U.S.C. § 1956(h). For purposes of this sufficiency challenge, Collins does not dispute that the evidence sufficed to show she entered into an agreement with Johnson and Hensley. Rather, Collins claims that the government did not present enough evidence to show that their agreement covered a substantive money-laundering offense. This appeal thus does not require us to consider anything specifically related to a *conspiracy* charge.

We instead must consider the "essential elements" of the *substantive* money-laundering offense. *Jackson*, 443 U.S. at 319. The money-laundering statute provides in relevant part:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or . . .
>> (B) knowing that the transaction is designed in whole or in part—
>>> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1). This dense text requires the government to prove three basic things. *See United States v. Matthews*, 31 F.4th 436, 447 (6th Cir. 2022). The defendant must have undertaken a "financial transaction" that "involved" the "proceeds" of "unlawful activity[.]" 18 U.S.C. § 1956(a)(1). The defendant must have engaged in the transaction while "knowing" that it involved these proceeds. *Id.* And the defendant must have *either* acted "with the intent to promote . . . specified unlawful activity" *or* known that the transaction was designed to "conceal" one of several traits about the illegal proceeds. *Id.* § 1956(a)(1)(A)(i), (B)(i).

5

The third requirement shows that a defendant can commit a money-laundering offense in one of two ways. The defendant can engage in the transaction with an intent to *promote* unlawful activity. *Id.* § 1956(a)(1)(A)(i). Or the defendant can engage in the transaction to *conceal* proceeds of unlawful activity. *Id.* § 1956(a)(1)(B)(i).

These "promotion" and "concealment" alternatives implicate an important (and generally applicable) question. Do the alternatives qualify as distinct *elements* that identify different offenses? Or do they qualify as separate *means* by which a defendant can commit a single offense? *See Mathis v. United States*, 579 U.S. 500, 506 (2016); *Richardson v. United States*, 526 U.S. 813, 817 (1999). If they qualify as separate means rather than distinct elements, an indictment may charge the defendant with both promotion and concealment money laundering in a single count. *See United States v. Hixon*, 987 F.2d 1261, 1265 (6th Cir. 1993). And the government may prove that a defendant committed one of the two alternatives without having to prove the other. *See id.*; *see also United States v. Damrah*, 412 F.3d 618, 622–23 (6th Cir. 2005).

So how have we answered this question in the money-laundering context? In unpublished decisions, we have treated the "promotion" and "concealment" portions of the money-laundering statute as separate means for committing a single offense. *See United States v. Martin*, 516 F. App'x 433, 445–48 (6th Cir. 2013). We thus have noted that the jury may convict a defendant of money laundering by finding either alternative met. *See id.* at 446; *United States v. Bohn*, 281 F. App'x 430, 442 (6th Cir. 2008) (per curiam); *see also United States v. Valdez*, 726 F.3d 684, 689–90 (5th Cir. 2013); *United States v. Seher*, 562 F.3d 1344, 1361–63 (11th Cir. 2009). Here, moreover, the jury instructions listed the alternatives as distinct "ways" in which the jury could find that Collins conspired to launder money. Tr., R.169, PageID 5263. Because Collins does not challenge this reading of the statute, we may assume its validity.

6

This reading, though, poses a fatal problem for Collins's sufficiency challenge. She argues that she merely spent the proceeds that she obtained from the fraudulent loans and that she never engaged in any transaction to conceal the proceeds. She adds that "the money laundering statute is a concealment statute, not a spending statute." *United States v. Embry*, 644 F. App'x 565, 570 (6th Cir. 2016). Yet most of the cases that she cites discuss only the "concealment" method of committing money laundering. *See id.*; *United States v. Dierker*, 417 F. App'x 515, 521–22 (6th Cir. 2011); *see also Regalado Cuellar v. United States*, 553 U.S. 550, 561–68 (2008). They do not discuss the "promotion" method. And again, the government presented both theories here.

Collins thus raises no argument that the government lacked sufficient evidence to show that she conspired to engage in a financial transaction "with the intent to promote the carrying on of specified unlawful activity[.]" 18 U.S.C. § 1956(a)(1)(A)(i). So she likely forfeited this claim. Besides, the government presented enough evidence that she engaged in financial transactions with the intent to promote her bank-fraud scheme. Our caselaw describes a drug dealer who puts drug money back into the business as the "paradigmatic example" of someone who commits promotional money laundering. *United States v. Warshak*, 631 F.3d 266, 317 (6th Cir. 2010). The jury could have found that Collins did the exact same thing. As one example, Hensley testified that she and Collins conspired to use the proceeds from fraudulent auto loans as the downpayment to complete the much larger fraudulent mortgage transaction.

These facts distinguish *United States v. McGahee*, 257 F.3d 520 (6th Cir. 2001), which did address the promotion part of the money-laundering statute. *See id.* at 526–27. In that case, the defendant had used proceeds of unlawful activity to pay his mortgage loan. *See id.* Because he committed his crimes out of his home, the government argued that the "house payments furthered" this criminal activity. *Id.* at 527. We disagreed, holding that "general business expenditures" that

7

are unrelated to the business's crime do not suffice to satisfy the promotion element. *Id.* Rather, the challenged transaction "must be explicitly connected to the mechanism of the crime." *Id.* Yet the government satisfied this requirement here. It presented evidence that the funds Collins had obtained by facilitating the fraudulent auto loans were "explicitly connected" to other fraudulent loans, such as Hensley's mortgage. *Id.* And because sufficient evidence existed to establish promotional money laundering, we need not consider Collins's argument that the government presented insufficient evidence of concealment money laundering.

## B. Evidentiary Challenge

At the least, Collins argues, we must grant her a new trial because of prejudicial testimony from a government expert. Special Agent William DeSantis with the Internal Revenue Service testified at trial about common money-laundering tactics. Collins suggests that DeSantis impermissibly opined on what the money-laundering statute requires and thus intruded on the judge's role as the expert on the "law." DeSantis noted, for example, that the statute bars money laundering intended to promote "specified unlawful activity," but that Congress defined that phrase to cover only certain crimes. DeSantis Tr., R.195, PageID 5647; *see* 18 U.S.C. § 1956(c)(7)(D). According to Collins, the district court violated Federal Rule of Evidence 702 by allowing this testimony about the law. *See United States v. Nixon*, 694 F.3d 623, 631–32 (6th Cir. 2012); *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).

We need not reach this evidentiary question because the alleged error did "not affect" Collins's "substantial rights[.]" Fed. R. Crim. P. 52(b). To evaluate whether an alleged evidentiary error was harmless, we have sometimes asked whether the government has shown "'by a preponderance' of the evidence" that it did not affect the verdict. *United States v. Agrawal*, 97 F.4th 421, 429 (6th Cir. 2024) (quoting *United States v. Kettles*, 970 F.3d 637, 643 (6th Cir. 2020)).

Other times, we have asked whether the government has provided a "fair assurance" that the error did not "substantially sway[]" the jury. *Id.* (quoting *Kettles*, 970 F.3d at 643).

Either way, the government established that Collins's alleged evidentiary error did not harm her. To begin with, our restrictions on expert testimony about the law stem from the concern that an expert will convey mistaken "legal standards to the jury." *Nixon*, 694 F.3d at 631 (quoting *Torres*, 758 F.2d at 631). In this case, however, Collins does not identify a single statement from DeSantis that misrepresents anything about the money-laundering statute. So we fail to see how DeSantis could have led the jury astray. Next, Collins challenges only DeSantis's statements about the money-laundering statute. So his testimony could not have influenced Collins's other convictions. Lastly, the government offered "'overwhelming' evidence" that Collins conspired to commit money laundering. *Agrawal*, 97 F.4th at 429 (quoting *United States v. Smith*, 749 F.3d 465, 495 (6th Cir. 2014)). As we have explained, Hensley testified about her efforts to use fraudulent auto loans to obtain a fraudulent mortgage.

Collins responds that the error "cannot be harmless" because it "elevat[es] the witness above the" district court. Reply Br. 3. If she means to claim that the alleged mistake counts as a "structural" error exempt from the usual harmless-error test, she cites no authority for that rule. Indeed, we regularly subject all sorts of alleged evidentiary errors to harmless-error analysis. *See Agrawal*, 97 F.4th at 429 (citing *Kettles*, 970 F.3d at 643). We have also done so for alleged errors in admitting expert testimony. *See United States v. Draper*, 2021 WL 2948857, at *3–4 (6th Cir. July 14, 2021); *United States v. Rios*, 830 F.3d 403, 416–17 (6th Cir. 2016).

Collins also claims that the government forfeited its harmless-error argument by raising it in a single paragraph. Reply Br. 3. But the government identified both points on which we rely: Collins did not cite anything legally mistaken in DeSantis's testimony, and the record contains

9

overwhelming evidence of her guilt. The government did not need to say more, especially because Collins made only conclusory claims as to why this expert testimony harmed her. *See United States v. Johnson*, 837 F. App'x 373, 379 (6th Cir. 2020).

## C. Sentencing Challenge

Collins lastly argues that the district court miscalculated her guidelines range in two ways. She correctly notes that a district court imposes "a procedurally unreasonable sentence" if it commits a guidelines error that affects a defendant's guidelines range. *United States v. Riccardi*, 989 F.3d 476, 481 (6th Cir. 2021). But she incorrectly suggests that such an error occurred here.

*Loss Calculation*. Collins first argues that the district court miscalculated the amount of "loss" that her fraud caused. The fraud guideline instructs district courts to increase a defendant's guidelines range based in part on the amount of the "loss." *See* U.S.S.G. § 2B1.1(b)(1). The commentary further clarifies that the word "loss" includes "intended loss"—that is, the loss that the defendant intended to inflict. *Id.* § 2B1.1 cmt. n.3(A), (3)(A)(ii). We have repeatedly upheld this commentary as a reasonable interpretation of the guideline. *See United States v. Smith*, 79 F.4th 790, 797–98 (6th Cir. 2023); *United States v. Kennert*, 2023 WL 4977456, at *2–3 (6th Cir. Aug. 3, 2023) (per curiam); *United States v. You*, 74 F.4th 378, 396–98 (6th Cir. 2023).

This caselaw dooms Collins's argument. She claims that the district court wrongly increased her offense level by 16 because its calculation of her "loss" amount ($2,166,242.32) represented the loss she *intended* to cause—not the loss she *actually* caused. *See* U.S.S.G. § 2B1.1(b)(1)(I). In *You*, however, we rejected the claim that the word "loss" reaches only amounts actually lost.

Collins responds that we should reconsider *You* because of the "reasonable debate" it has produced. Reply Br. 7; *cf. Kennert*, 2023 WL 4977456, at *4–6 (Murphy, J., concurring). But a

panel of our court must follow our published precedent unless it conflicts with an intervening Supreme Court case or our en banc court has overruled it. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Collins identifies neither type of change.

*Leadership Role*. Collins next criticizes the district court's decision to impose a two-level enhancement for her "leadership" role in the fraud. *See* U.S.S.G. § 3B1.1. The aggravating-role guideline instructs district courts to increase a defendant's offense level by two "[i]f the defendant was an organizer, leader, manager, or supervisor in" the criminal offense. *Id.* § 3B1.1(c). This guideline's key terms have "obvious enough" meanings. *United States v. Warren*, 2023 WL 1961222, at *3 (6th Cir. Feb. 13, 2023). An organizer "arranges" the criminal conduct, whereas a leader "guides others" in it. *Id.* (first quoting 10 *Oxford English Dictionary* 924 (2d ed. 1989), then quoting 13 *Oxford English Dictionary*, *supra*, at 747). Meanwhile, a manager "direct[s] the affairs of" the criminal conduct, whereas a "supervisor" "exercises general direction" over the criminal activities or the accomplices. 9 *Oxford English Dictionary*, *supra*, at 292 (defining "manage"); 17 *Oxford English Dictionary*, *supra*, at 245 (defining "supervisor").

In addition, both parties accept the commentary's additional instructions as a reasonable interpretation of the guideline's terms. As relevant here, the commentary notes that the guideline applies only if the defendant qualified as "the organizer, leader, manager, or supervisor" of "one or more other participants" in the crime. U.S.S.G. § 3B1.1 cmt. 2. So if the defendant organized, led, managed, or supervised only the criminal *activity* and not any of the criminal *participants*, the enhancement does not apply. *Id.*; *see, e.g.*, *United States v. Bertram*, 900 F.3d 743, 753–54 (6th Cir. 2018); *United States v. Kamper*, 748 F.3d 728, 748 (6th Cir. 2014).

According to Collins, the district court overlooked this element because she did not direct any of the participants in the fraud (even if she organized it). The district court held to the contrary

11

because it found that Collins directed Hensley in what to "say to loan officers" about the fraudulent mortgage. Sent. Tr., R.223, PageID 6813. It added that Collins told Johnson where to send the criminal "proceeds" and gave him car "listings" to facilitate the auto-loan fraud. *Id.*

We review the district court's factual findings for clear error and its ultimate conclusion that the facts justified this enhancement deferentially. *See United States v. Washington*, 715 F.3d 975, 982–83 (6th Cir. 2013). And the court reasonably rejected Collins's argument. To begin with, the commentary required Collins to have organized, led, managed, or supervised just "one" other participant. U.S.S.G. § 3B1.1 cmt. 2; *see, e.g.*, *United States v. Minter*, 80 F.4th 753, 758 (6th Cir. 2023); *United States v. Baker*, 559 F.3d 443, 449 (6th Cir. 2009). We thus need not decide whether she directed Johnson in their joint criminal efforts. Rather, her direction of Hensley would suffice. And Hensley's testimony revealed this direction in detail. From the outset, Hensley reached out to Collins to get a loan for "a house." Hensley Tr., R.164, PageID 4173. She also "would touch base with" Collins whenever she got information about the mortgage to ensure that she handled the falsified documents correctly. Hensley Tr., R.165, PageID 4464.

In response, Collins points out that Hensley was "equally motivated" as Collins to obtain the mortgage loan. Appellant's Br. 27. She fails to explain why this fact matters. A low-level criminal participant with a strong motivation to commit a crime can still get supervision from others about how to execute it. Without Collins's supervision along the way, Hensley likely could not have obtained many of the fraudulent loans.

We affirm.