RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 19-5698

BRITTAN EZEKIEL KETTLES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:16-cr-00163-1—Aleta Arthur Trauger, District Judge.

Decided and Filed: August 12, 2020

Before: GIBBONS, LARSEN, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Manuel B. Russ, Nashville, Tennessee, for Appellant. Sangita K. Rao, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Kathryn Risinger, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

LARSEN, Circuit Judge. In June 2016, Brittan Kettles set out to build a prostitution "empire." He then prostituted a thirteen-year-old child to at least six different men. A jury convicted Kettles of one count of sex trafficking a child in violation of 18 U.S.C. §§ 2 and 1591(a)(1), (b)(1), and (c), and one count of conspiracy to do the same in violation of § 1594(c). Kettles now raises six challenges to his conviction on appeal. For the reasons that follow, we AFFIRM.

I.

This case began with an Instagram message. On June 15, 2016, Kettles messaged an eighteen-year-old woman named Stormy Whittemore to tell her that she could be a "million-dollar girl." He promised Whittemore money, cars, and houses if she agreed to help him build an "empire." Whittemore gave Kettles her phone number and the two met face-to-face in a parking lot later that same day.

Kettles explained his plan to Whittemore. He would post pictures of Whittemore on backpage.com—a website commonly used for prostitution; men interested in having sex with Whittemore would message Kettles; he would negotiate a time, location, and price for the encounter; he would then transport Whittemore to the location and wait outside while she had sex with the man; and afterwards, Kettles would collect the money. Eventually, Kettles hoped that he and Whittemore would build a "team" of prostitutes that would make them both rich. If all went according to plan, Kettles promised Whittemore "houses, . . . cars and a lot of money." Whittemore agreed; she had sex with her first "customer" later that night.

That same night, Whittemore received a call from A.D., a thirteen-year-old girl. Whittemore and A.D. lived in the same trailer park and the two had "gr[own] up together." They referred to each other as "cousins." That night, A.D. needed a ride home; her father, who had terminal colon cancer, was out of town receiving medical treatment and her mother was at work. Whittemore and Kettles picked A.D. up and drove her home.

The next day, Whittemore and Kettles retrieved A.D. at her home. Kettles gave Whittemore and A.D. marijuana, which they smoked in his car. Kettles then drove Whittemore to a prostitution call. A.D. sat in the car with Kettles while Whittemore went inside the house; when Whittemore returned with between $200 and $350, she handed it to Kettles.

Whittemore then began recruiting A.D. Still in the car, she texted A.D., "You trying to make some money[?]" A.D. asked, "How?" Whittemore responded, "You know how." A.D. deflected, asking instead whether Kettles and Whittemore would get her some food. Whittemore was explicit, "We take yo[u] to eat . . . you do some calls." A.D. resisted. She told Whittemore

that she would think about it.  But the next morning, still hungry and lacking food at home, A.D. texted Whittemore:  "I'm trying to make some money today."

Kettles arranged a prostitution call for A.D. later that night.  He drove A.D. and Whittemore to a hotel where he had booked a room.  The three entered the hotel room together, and then Kettles and Whittemore left to wait in the parking lot.  A few minutes later, a man entered the hotel room, had sex with A.D., and then left.  A.D. called Whittemore to say that she was done.  Whittemore responded, "Take a shower.  Leave the money on the table."  Kettles and Whittemore then entered the hotel room and collected the cash.

Kettles prostituted A.D. five more times over the next two days.  Each time the process remained roughly the same: Kettles negotiated the time, location, and price with the men who responded to his listing on backpage.com; he and Whittemore went with A.D. to the location; A.D. had sex with the men; and Kettles collected the money.  Throughout this time, Kettles knew that A.D. was a minor.  He had previously asked about her "real age."  When A.D. told him that she was a minor, Kettles said, "make sure you say that you're 18 if they ask."

Kettles returned A.D. to her parents' home on June 19, 2016.  The next day, A.D.—who had been paid only $70 thus far—texted both Whittemore and Kettles asking for more money.  She had earned Kettles and Whittemore between $150 and $280 per call, and she had done six calls during the previous two days.  In her estimation, she deserved at least another $150 of that money.  Kettles disagreed.  He offered $60.  A.D. reluctantly accepted and asked Kettles to put the money in her mailbox.  But Kettles placed only $15 in the mailbox.  He and Whittemore then left town.

At that point, A.D. told her parents that Kettles and Whittemore had prostituted her; her parents immediately called the police.  Several weeks later, Kettles and Whittemore were apprehended and arrested.  In a post-arrest interview, Kettles admitted to "helping" Whittemore and A.D. engage in prostitution.  He also admitted to knowing that A.D. was a minor at the time, telling the officers that he "believed that she was 17."

A grand jury indicted Kettles on one count of sex trafficking a child in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), (c) and § 2, and one count of conspiracy to do the same in violation

of 18 U.S.C. § 1594(c).  Kettles pleaded not guilty.  A jury convicted him on both counts and the district court sentenced him to 180 months' imprisonment.  This appeal followed.

## II.

## A.

Kettles first challenges one of the district court's evidentiary rulings.  We review for an abuse of discretion.  *United States v. Chavez*, 951 F.3d 349, 357–58 (6th Cir. 2020).  A trial court abuses its discretion if it "(1) misunderstood the law (here, the Federal Rules of Evidence), (2) relied on clearly erroneous factual findings, or (3) made a clear error of judgment."  *Id.* at 358.

Kettles argues that he should have been permitted to cross-examine A.D. about inconsistent statements she had allegedly made concerning three prior sexual assaults.  The district court prevented this line of questioning based on Federal Rule of Evidence 412.  In relevant part, that Rule provides:

>(a) Prohibited Uses.  The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
>>(1) evidence offered to prove that a victim engaged in other sexual behavior; or
>
>>(2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412.  Kettles asserts that rather than trying to prove that A.D. had engaged in "other sexual behavior," *see id.*, his proffered cross-examination sought to impeach A.D.'s credibility by showing that she had been "untruthful with the police and her counselors" regarding past sexual assaults; as a result, says Kettles, the district court erred by concluding that his proffered cross-examination fell within the scope of Rule 412.

Kettles is right.  We have held that not all evidence implicating a victim's past sexual activity falls within Rule 412(a).  *See United States v. Willoughby*, 742 F.3d 229, 234 (6th Cir. 2014) (holding that evidence of false accusations is not excluded by Rule 412 because the "whole predicate" of such evidence is "that there was no other sexual behavior to begin with" (quotation marks omitted)), *overruled on other grounds by Johnson v. United States*, 135 S. Ct.

2551 (2015). Instead, Rule 412(a) excludes only two narrow categories of evidence: (1) "evidence offered to prove that a victim engaged in other sexual behavior," and (2) "evidence offered to prove a victim's sexual predisposition." *See* Fed. R. Evid. 412. As in *Willoughby,* Kettles' proffered cross-examination sought to introduce evidence for neither purpose; he sought to impeach A.D.'s credibility by showing that she had been untruthful regarding past allegations of sexual assault.

The district court mistakenly relied on our prior decision in *United States v. Cardinal*, 782 F.2d 34 (6th Cir. 1986). In that case, we held that evidence "interwoven" with past sexual activity is inadmissible under Rule 412. *Id.* at 36. In *Willoughby*, however, we recognized that *Cardinal* had applied a prior version of Rule 412—one that has subsequently "been amended three times and substantially rewritten." *Willoughby*, 742 F.3d at 234. The current rule does not exclude cross-examination into past untruthfulness regarding sexual assaults. *See id.*; Fed. R. Evid. 412 advisory committee's note to 1994 amendments ("Evidence offered to prove allegedly false prior claims by the victim is not barred by Rule 412."). The district court therefore erred in concluding that Rule 412 prohibited Kettles' proffered cross-examination.[1]

That does not end our inquiry, however. "Evidentiary errors remain subject to harmless error review." *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015); *see also* Fed. R. Crim. P. 52(a). Our court has applied at least four different measures of harmlessness for non-constitutional evidentiary errors in a criminal case. We have required (1) the defendant to show by a preponderance that the error *did* affect the outcome, *see United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009); *United States v. Caver*, 470 F.3d 220, 239 (6th Cir. 2006); (2) the government to show by a preponderance that the error *did not* affect the outcome, *see Kilpatrick*, 798 F.3d at 378; *United States v. Luck*, 852 F.3d 615, 628 (6th Cir. 2017); (3) the record to provide us with "fair assurance" that the verdict was *not* "substantially swayed" by the error, *see United States v. Chavez*, 951 F.3d 349, 358 (6th Cir. 2020) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)); *United States v. Craig*, 953 F.3d 898, 906 (6th Cir. 2020); and (4) the record to show "beyond a reasonable doubt" that the error did not affect the verdict, *see United*

---

[1]We do not decide whether this line of questioning could have been properly excluded under some other evidentiary rule, such as Rule 403.

*States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013) (quoting *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006)); *Willoughby*, 742 F.3d at 235.

The Supreme Court, meanwhile, has instructed that we may not grant a new trial on the basis of non-constitutional trial error where we have a "fair assurance" that the verdict was *not* "substantially swayed" by the error." *Kotteakos,* 328 U.S. at 765; *see also Chavez,* 951 F.3d at 358. The Court has also explained that, in criminal cases, it is for the "Government to explain why an error should not upset the trial court's determination," *Shinseki v. Sanders*, 556 U.S. 396, 410–11 (2009) (citing *United States v. Olano*, 507 U.S. 725, 741 (1993) (stating that the Government bears the "burden of showing the absence of prejudice")), and that the government's burden for constitutional errors is "considerably more onerous" than its burden for non-constitutional errors, *United States v. Lane*, 474 U.S. 438, 446 n.9 (1986).

This direction from the Supreme Court undermines our first and last standards. The first standard—applied in cases like *Davis*, 577 F.3d at 670, and *Caver*, 470 F.3d at 239—is too hard on criminal defendants because it requires them to show harm on appeal.[2] *See Shinseki*, 556 U.S. at 410–11. The fourth standard—applied in cases like *Freeman*, 730 F.3d at 595, and *Willoughby*, 742 F.3d at 235—is too hard on the government because it requires the government to show harm "beyond a reasonable doubt," a standard the Supreme Court has reserved for *constitutional* error.[3] *See, e.g.*, *Lane*, 474 U.S. at 446 n.9 ("[T]he standard for harmless-error

---

[2]The rule requiring a criminal defendant to demonstrate prejudice on appeal seems to have originated in this court with *United States v. Neuroth*, 809 F.2d 339, 342 (6th Cir. 1987) (en banc) ("An error, not of constitutional dimension, is *harmless unless* it is more probable than not that the error materially affected the verdict." (emphasis added)). The Supreme Court has since instructed otherwise. *See Shinseki*, 556 U.S. at 410–11; *Olano*, 507 U.S. at 741.

[3]As explained in *Kilpatrick,* 798 F. 3d at 378 n. 2, this error seems to have crept into our caselaw with *United States v. Baldwin*, 418 F.3d 575, 581–82 (6th Cir. 2005), and has been repeated in cases like *Lopez-Medina,* 461 F.3d at 741, *Freeman*, 730 F.3d at 595, and *Willoughby*, 742 F.3d at 235. In evaluating a claim of non-constitutional evidentiary error, *Baldwin* cited *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003) (per curiam), for the proposition that "an error is harmless 'when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 418 F.3d at 582. But *Mitchell* concerned *constitutional* error. *See Mitchell,* 540 U.S. at 17–18 ("A *constitutional error* is harmless when 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (emphasis added) (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999))). Decisions of this court pre-dating *Baldwin*, however, rightly recognized that *Chapman* does not govern non-constitutional evidentiary error. *See United States v. Huddleston*, 811 F.2d 974, 977 (6th Cir. 1987) ("The 'harmless beyond a reasonable doubt' standard announced in *Chapman v. California,* 386 U.S. 18 (1967), dealt only with error of constitutional dimension, and any erroneous evidentiary ruling in this case was clearly not of constitutional magnitude."), *aff'd,* 485 U.S. 681 (1988).

analysis adopted in *Chapman* concerning constitutional errors is considerably more onerous than the standard for nonconstitutional errors adopted in *Kotteakos* . . . .").  That leaves as candidates for the proper harmless error test the second (*Kilpatrick*, 798 F.3d at 378) and third standards (*Chavez*, 951 F.3d 358), both of which rely on *Kotteakos*.  The differences between them seem to be, first, that *Chavez* articulates only *Kotteakos*'s "fair assurance" language as the standard, whereas *Kilpatrick* requires persuasion by a preponderance (a standard it implicitly equates with a "fair assurance");[4] and second, that *Chavez* is less explicit than *Kilpatrick* in placing the "risk of doubt," *see O'Neal v. McAninch*, 513 U.S. 432, 439 (1995), on the Government.  We need not reconcile any differences between these two standards, however, because the district court's error was harmless under either measure.

*Willoughby* proves this point.  In *Willoughby*, we held that the trial court's error in excluding impeachment evidence under Rule 412 was harmless beyond a reasonable doubt because "overwhelming" evidence corroborated the victim's testimony.  742 F.3d at 235.  Although, by applying *Chapman*'s "harmless beyond a reasonable doubt" standard, *Willoughby* erred on the side of being too generous to the criminal defendant's non-constitutional claim, *see Lane*, 474 U.S. at 446 n.9, its application of that most-exacting standard is instructive.  Indeed, because *Willoughby* is almost directly on point, it allows us to conclude, *a fortiori,* that the error in Kettles' case was likewise harmless under the less onerous standards articulated in *Kilpatrick*, 798 F.3d at 378, and *Chavez*, 951 F.3d at 358.

Like Kettles, the defendant in *Willoughby* appealed from a conviction for sex trafficking a minor under 18 U.S.C. § 1591(a) and (b).  742 F.3d at 233.  We concluded that the trial court had erroneously interpreted Rule 412 to prevent the defendant from cross-examining the minor

---

**4***Kilpatrick* suggests that the "fair assurance" standard is equivalent to the preponderance standard.  *See Kilpatrick*, 798 F.3d at 378.  Yet we have also suggested that these standards are substantially different.  *See Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004) (noting, in a civil case purporting to apply the *Kotteakos* "fair assurance" standard, that the preponderance standard "would seem to require an appellant to do more than merely deprive the appellate court of a 'fair assurance'"), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).  We could find no Supreme Court precedent giving a clear account of the relationship between these two standards, though opinions of individual Justices suggest that the two standards are not the same.  *See United States v. Dominguez Benitez*, 542 U.S. 74, 86 (2004) (Scalia, J., concurring in the judgment) (describing the "'more likely than not' standard" as "less defendant-friendly" than *Kotteakos* when, as in "claims of newly discovered evidence," the defendant bears the burden of showing harm); *Strickler v. Greene*, 527 U.S. 263, 300 (1999) (Souter, J., concurring in part and dissenting in part) (describing a "gap" between the *Kotteakos* and preponderance standards).

victim about her recantation of a past allegation of sexual assault. *Id.* at 234–35. Yet because the "corroborative force" of the other evidence, which included witness testimony, hotel receipts, and phone records, "overwhelmed the modest impeachment value of any cross-examination," we held that the trial court's error was harmless beyond a reasonable doubt. *Id.* at 235.

Here, the corroborative evidence is strikingly similar, and it is just as overwhelming. In addition to A.D.'s testimony, jurors saw surveillance footage of Kettles and Whittemore leading A.D. into a hotel room, waiting outside while a man entered the hotel room, and returning after the man had left; they saw hotel records confirming that Kettles had reserved a room on those occasions; they saw a sexually provocative photo of A.D. that was stored on Kettles' phone; and they saw voluminous text messages and call records between Kettles, Whittemore, and A.D. documenting the prostitution activities. Jurors also heard from Whittemore, who corroborated A.D.'s testimony in all material respects; and they heard from a police officer who recounted Kettles' admission that he "help[ed]" A.D. engage in prostitution and knew that she was under eighteen. On this record, any error in excluding Kettles' proffered cross-examination was harmless. *See Willoughby*, 742 F.3d at 235.

B.

Kettles also challenges the district court's admission of evidence that he prostituted Whittemore. At trial, Kettles sought to exclude this evidence under Federal Rule of Evidence 404(b), which provides that extrinsic evidence of prior "crime[s], wrong[s], or other act[s]" is inadmissible to prove the defendant's propensity for criminal activity. The district court denied his motion on two grounds. First, it concluded that Rule 404(b) did not apply because Whittemore's prostitution was intrinsic to—or part of the "res gestae" of—the offense. Second, to the extent Rule 404(b) did apply, the court held that evidence of Whittemore's prostitution was admissible under Rule 404(b)(2)'s exception for evidence used to prove "intent, plan, motive, [or] knowledge."

On appeal, Kettles has challenged only the district court's conclusion that evidence of Whittemore's prostitution was admissible under Rule 404(b)(2). He does not challenge the district court's alternative reliance on the well-established rule that "*[r]es gestae* evidence does

not implicate Federal Rule of Evidence 404(b)." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). Kettles, therefore, has forfeited a dispositive component of this claim, *see United States v. Wooden*, 945 F.3d 498, 506 (6th Cir. 2019), and we affirm on that basis.

C.

Next, Kettles argues that the district court's jury instructions and verdict form erroneously subjected him to enhanced penalties under § 1591(b)(1). That provision establishes a minimum 15-year prison sentence for anyone convicted under § 1591(a) of sex trafficking a minor if the victim "had not attained the age of 14 years at the time of such offense."[5] § 1591(b)(1). The district court instructed the jury that if it found Kettles guilty it would then need to decide whether "the government prove[d] that [A.D.] had not attained the age of 14 years at the time of the offense beyond a reasonable doubt . . . ." After convicting Kettles, the jury made that finding, which triggered the fifteen-year minimum sentence under § 1591(b)(1).

Kettles' primary argument is that the district court's instructions were flawed because they failed to instruct the jury to find scienter. He contends that for § 1591(b)(1)'s enhanced penalties to apply, he must have known, or recklessly disregarded, that A.D. was under the age of fourteen. Trial courts have "broad discretion in crafting jury instructions," and abuse that discretion when their instructions, viewed as a whole, "fail[ to] accurately [] reflect the law." *United States v. Geisen*, 612 F.3d 471, 485 (6th Cir. 2010) (quoting *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007)).

We begin with the statutory text. Section 1591(b)(1) sets out the punishment for the crime of sex trafficking a minor under § 1591(a):

> (b) The punishment for an offense under subsection (a) is—
>
>> (1) if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or *if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense,* by a fine under this title and imprisonment for any term of years not less than 15 or for life[.]

---

[5]If the victim "had attained the age of 14 years but had not attained the age of 18 years at the time of such offense," the minimum sentence is 10 years. § 1591(b)(2).

§ 1591(b)(1) (emphasis added). On its face, this penalty provision does not contain a scienter requirement; it imposes a fifteen-year minimum sentence on anyone convicted under subsection (a)(1) if the victim was under the age of fourteen—regardless of the defendant's awareness that the victim "had not attained" that age. *See id.* Kettles concedes that this provision does not "specifically reference" a scienter requirement with respect to the age of the victim.

Yet we may not end our inquiry there. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994). The Supreme Court has instructed us generally to apply a "presumption in favor of scienter" when interpreting criminal statutes. *See Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019). Thus, we must usually presume that Congress intended to require some degree of scienter for "each of the statutory elements that criminalize otherwise innocent conduct." *Id.* (quoting *X-Citement Video*, 513 U.S. at 72). Kettles argues that this presumption requires us to read a scienter requirement into § 1591(b)(1).

We disagree for two reasons. First, the presumption in favor of scienter attaches only to those elements of a crime that "separate wrongful conduct from otherwise innocent conduct." *See Elonis v. United States*, 135 S. Ct. 2001, 2010 (2015) (quotation marks omitted). Accordingly, we have held that the presumption does not apply to "jurisdictional" elements, *see United States v. Chambers*, 441 F.3d 438, 450 (6th Cir. 2006) (citation omitted), and certain "penalty provisions," *see United States v. Dado*, 759 F.3d 550, 570–71 (6th Cir. 2014). In *Dado*, for example, we held that the "penalty provisions" of 21 U.S.C. § 841 do not require scienter regarding the quantity of drugs involved in an offense—an element that affects the defendant's minimum sentence but not his underlying criminal liability. *See id.*

The same reasoning applies here. Whether the victim "had not attained the age of 14 years," *see* § 1591(b)(1), affects the defendant's minimum sentence and, as such, must be found by a jury, *see Alleyne v. United States*, 570 U.S. 99, 108 (2013), but it is not a "'crucial element' separating innocent from wrongful conduct" such that a scienter provision must attach to it. *See Rehaif*, 139 S. Ct. at 2197 (quoting *X-Citement Video*, 513 U.S. at 73). A person is guilty of sex trafficking a minor under § 1591(a) so long as he engaged in trafficking activity while "knowing, or . . . in reckless disregard of the fact . . . that the [victim] ha[d] not attained the age of 18 years." Thus, § 1591(b)(1) is merely a "penalty provision," *see Dado*, 759 F.3d at

570–71, to which the presumption in favor of scienter does not attach, *see Rehaif* 139 S. Ct. at 2197; *see also Ortiz v. Barr*, 962 F.3d 1045, 1051 (8th Cir. 2020) (holding that "the presumption in favor of a scienter requirement does not apply" to "penalty provision[s]").

Second, certain types of sex offenses against minors have been "traditionally excepted from the background principle favoring scienter." *X-Citement Video*, 513 U.S. at 71, 72 n.2. Relying on that exception, the Second Circuit recently rejected the very argument made here: "that imposition of the enhanced penalty established by section 1591(b)(1) requires proof . . . that the defendant knew or recklessly disregarded that the minor victim was under fourteen years of age." *See United States v. Thompson*, 896 F.3d 155, 169–70 (2d Cir. 2018) ("[T]here is no common law tradition that crimes involving sexual offenses against minors invariably require a specific mental state with respect to the victim's age."). We agree. Section 1591(b)(1)'s enhanced penalties do not require scienter regarding the victim's age, and the district court's instructions "accurately [] reflect[ed] the law." *See Geisen*, 612 F.3d at 485.

Kettles claims, alternatively, that the jury instructions and verdict form constructively amended the indictment.[6] Although Kettles objected to the district court's jury instructions and verdict form on statutory grounds, he never raised this constructive-amendment argument below. We therefore review for plain error. *See United States v. Blood*, 435 F.3d 612, 625 (6th Cir. 2006) ("If . . . the objection is not sufficiently specific, we review the claimed defect in the instruction only for plain error.").

The Fifth Amendment shields a defendant from prosecution on "charges that are not made in the indictment against him." *See Stirone v. United States*, 361 U.S. 212, 215–217 (1960); *see also* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). Thus, we have held that a district court cannot constructively amend an indictment through its jury instructions and verdict forms. *See, e.g.*, *United States v. Ford*, 872 F.2d 1231, 1237 (6th Cir.

---

[6]At one point in his brief, Kettles proclaims that the verdict form amounted to an "actual amendment" of the indictment. But that cannot be what he means. "An actual amendment occurs when the prosecutor actually changes the text of the indictment." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007)). And, indeed, Kettles uses the term "constructive amendment" elsewhere in his brief to refer to this argument. We construe his argument accordingly.

1989).   A constructive amendment occurs when the instructions and verdict form "modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (citation omitted).

Here, the indictment charged Kettles with, among other things, recruiting, enticing, and transporting A.D., while "knowing and in reckless disregard of the fact, and having had a reasonable opportunity to observe [A.D.], that [A.D.] had not attained the age of 14 years and that [A.D.] would be caused to engage in a commercial sex act."  In contrast, for § 1591(b)(1)'s enhanced penalties to apply, the jury instructions and verdict form required the jury to find that A.D. was, in fact, under fourteen, but did not require the jury to find that Kettles knew, recklessly disregarded, or had a reasonable opportunity to observe her age.[7]  The jury instructions and verdict form reflected the correct reading of the statute, as explained above. Yet, because the indictment alleged more than was necessary under the statute, Kettles argues that the district court constructively amended the indictment by not requiring the jury to find more than was necessary under the statute as well.

This argument fails.   Indictments routinely include allegations that are either overinclusive or mere surplusage, and such "useless averment[s]" can simply be ignored when crafting jury instructions and verdict forms. *See United States v. Hathaway*, 798 F.2d 902, 911 (6th Cir. 1986) (quoting *United States v. Miller*, 471 U.S. 130, 136 (1985)); *see also United States v. Renzi*, 769 F.3d 731, 756–57 (9th Cir. 2014) ("[L]anguage that describes elements beyond what is required under the statute is surplusage and need not be proved at trial." (internal citations omitted)).  Here, the jury instructions contained all the elements required for the jury to find that § 1591(b)(1)'s enhanced penalties apply.  That the indictment contained superfluous elements is of no consequence. The district court did not err; at the very least, no such error was "plain." *See Blood*, 435 F.3d at 625.

---

[7]The instructions did require the jury to find that Kettles knew, recklessly disregarded, or had a reasonable opportunity to observe that A.D. was under eighteen in order to convict under § 1591(a).

D.

Kettles' other constructive-amendment argument fails for similar reasons. The indictment used the conjunctive, "and," when alleging alternative means through which Kettles committed the offense. It alleged that he knowingly "recruited, enticed, harbored, transported, provided, obtained, *and* maintained" A.D. while knowing or recklessly disregarding that she was a minor and would be caused to engage in a commercial sex act. *See* R. 283, PageID 1854–55 (emphasis added). At the close of trial, however, the district court instructed the jury that it could convict based on "any one" of those acts. Kettles argues that this implicit switch from the conjunctive to the disjunctive constructively amended the indictment.

This argument is foreclosed by our caselaw. We have repeatedly affirmed "[t]he government's right to charge in the conjunctive and prove in the disjunctive." *See United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012); *Budd*, 496 F.3d at 528–29; *Hathaway*, 798 F.2d at 913. Kettles concedes this point in his brief yet presses the argument anyway. Consistent with our caselaw, we reject this claim.

E.

Kettles next turns to the district court's denial of his motion for a new trial. After the jury found him guilty, Kettles claimed to have received a letter from Whittemore recanting her trial testimony. Arguing that this letter was "newly discovered evidence" of his innocence, Kettles moved for a new trial under Federal Rule of Criminal Procedure 33. The district court denied that motion, finding that the letter had been forged. Kettles challenges that finding on appeal.

We will not reverse the district court's denial of a motion for a new trial "absent a clear abuse of discretion." *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992) (per curiam) (quotation marks omitted). With respect to factual findings, such an abuse occurs only when the district court "relie[d] on clearly erroneous findings of fact." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000) (citation omitted). Kettles cannot surmount that bar. At an evidentiary hearing following his motion, Whittemore testified that she had not written the letter and that her trial testimony was truthful. Additionally, the government presented testimony from a handwriting expert who opined that Kettles had likely forged the letter himself. Although

Kettles presented contrary expert testimony, the district court was not required to credit his expert over the government's. The district court's finding that the letter had been forged is not clearly erroneous, and we affirm the district court's denial of Kettles' motion for a new trial.

F.

Finally, Kettles argues that the district court erroneously denied his motion to dismiss the indictment under the void-for-vagueness doctrine. That doctrine, rooted in the Fifth Amendment's Due Process Clause, prohibits conviction pursuant to laws that are "impermissibly vague." *United States v. Lopez*, 929 F.3d 783, 785 (6th Cir. 2019) (quoting *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012)). In his motion, Kettles contended that § 1591(a)'s use of the phrase, "will be caused," renders the statute unconstitutional. The district court disagreed, and Kettles renews his argument on appeal. We review the district court's denial of a motion to dismiss the indictment de novo. *Id.*

Few statutes meet the void-for-vagueness threshold: a "strong presumptive validity" applies to all acts of Congress and mere "difficulty" in determining a statute's meaning does not render it unconstitutional. *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). A statute is unconstitutionally vague only if it either (1) "defines [the] offense in such a way that ordinary people cannot understand what is prohibited," or (2) "encourages arbitrary or discriminatory enforcement." *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (quoting *United States v. Avant,* 907 F.2d 623, 625 (6th Cir. 1990)). Hypothetical vagueness is not enough; the statute must be unconstitutionally vague "as applied to [t]his particular case." *Id.* Thus, Kettles can only prevail if the text of § 1591(a) is so vague that it failed to provide him with "sufficient warning" that his prostitution of A.D. would violate the law. *Nat'l Dairy Prods. Corp.*, 372 U.S. at 33.

As applied to Kettles, the statute's use of the phrase "will be caused" is more than sufficiently clear. In relevant part, § 1591(a) states:

> Whoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age

of 18 years and *will be caused* to engage in a commercial sex act, shall be punished as provided in subsection (b).

§ 1591(a) (emphasis added). Here, Kettles engaged in the conduct prohibited by the statute for the express purpose of causing A.D. to engage in commercial sex acts—and he did, in fact, cause her to engage in those acts. That a reader might stumble over the statute's use of the phrase, "will be caused," has no bearing on this case. We affirm the district court's denial of Kettles' motion to dismiss the indictment.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment in its entirety.