NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0124n.06

No. 21-5550

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 18, 2022 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TERRY LEE GILBREATH, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before:  WHITE, THAPAR, and LARSEN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Defendant-Appellant Terry Lee Gilbreath appeals his convictions of two counts of producing child pornography in violation of 18 U.S.C. § 2251(a), arguing the government failed to prove the interstate-commerce element of the offense beyond a reasonable doubt.  He also challenges the district court's exclusion of evidence he asserts was necessary for him to present a complete defense.  We AFFIRM.

**I.**

A grand jury charged Gilbreath with two counts of exploiting a minor "with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer[.]"  18 U.S.C. § 2251(a).  The charges stemmed from videos allegedly depicting Gilbreath engaging in sexually

explicit conduct with an eight-year-old child, B.T. These videos were allegedly taken by Gilbreath on his cell phone and then copied by him onto two computer hard drives.

Prior to trial, the government moved to exclude two types of evidence proffered by Gilbreath: one involving a prior allegation of inappropriate touching made by B.T. against her thirteen-year-old brother, and the other involving the fact that her grandfather is a registered sex offender. The government argued that the evidence was prohibited under Federal Rule of Evidence 412, which disallows "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual disposition." Fed. R. Evid. 412(a). It also argued that neither type of evidence was relevant because the body shown engaging in sexually explicit conduct with B.T. was not that of a teenage boy or an elderly man, and no evidence linked the brother or grandfather to the videos or to Gilbreath's home where the videos were taken, yet the proffered evidence would cause unnecessary emotional distress to B.T. Thus, the government contended, the evidence should be excluded under Federal Rule of Evidence 403.

In response, Gilbreath argued that Rule 412 is inapplicable because neither type of evidence was offered to prove B.T.'s sexual predisposition or that she engaged in other sexual acts. He also argued that, even if Rule 412 applied, preventing him from introducing the proffered evidence would violate his constitutional right to present a complete defense, because the prior allegation made by B.T. against her brother was similar to the one she made against Gilbreath, which might cause the jury to doubt that Gilbreath was the person in the videos or the one who produced them. He similarly argued that because the grandfather lived close to B.T. at the relevant time and was a registered sex offender, the jury might wonder whether he, not Gilbreath, committed the charged crimes. Gilbreath argued that because B.T. was not expected to testify, the proffered evidence was more probative than prejudicial.

The district court addressed the government's motion on the first day of trial, before the jury was brought into the courtroom. The district court asked Gilbreath's counsel if he had any evidence linking the videos to the grandfather or his house or to the brother or anywhere the brother might have been. Gilbreath's counsel replied, "[t]here is no evidence to that effect." R. 54 PID 635. After a brief recess, the district court granted the government's motion.

Regarding the evidence involving allegations of inappropriate touching by B.T.'s brother, the district court concluded that it "constitute[s] evidence of the victim's past sexual behavior, which is subject to Rule 412." R. 54 PID 638. It also noted that Gilbreath had failed to timely file a written motion describing both the evidence and the purpose for which it will be offered, "and for that reason alone . . . the evidence is inadmissible under Rule 412." R. 54 PID 640. Further, the district court determined that because Gilbreath did not intend to introduce any evidence to link B.T.'s brother to the videos, the prior-allegation evidence "is so lacking in probative value that its exclusion could not amount to a constitutional violation." R. 54 PID 641. For the same reason, the court concluded that this evidence should be excluded as either irrelevant or because its minimal probative value was substantially outweighed by its potential to unfairly prejudice or mislead the jury.

Regarding the evidence of the grandfather's status as a registered sex offender, the district court noted that Gilbreath "concedes that there is no proof to tie the grandfather to the acts depicted" and that "the conduct relating in the victim's grandfather's sex[-]offender status apparently occurred before the victim in this case was born and involved a teenager to whom he was unrelated." R. 54 PID 641–42. The district court concluded that the proffered evidence "does not have a tendency to make a fact more or less probable than it would be without the evidence" and, thus, was inadmissible. R. 54 PID 642. The district court additionally concluded that the sex-

offender evidence should be excluded because its minimal probative value was substantially outweighed by its potential to unfairly prejudice or mislead the jury, given that it involved conduct markedly different than the conduct depicted in the videos and could cause the jury to think negatively of B.T.'s family.

Trial then began. B.T.'s mother testified that Gilbreath met B.T. at a nearby yard sale and then escorted her home. A couple of weeks later, Gilbreath asked if B.T. could spend the night at his house, ostensibly because his grandchildren would be staying over too, and B.T.'s mother said yes—when B.T.'s brother asked if he could come along, Gilbreath said no. According to B.T.'s mother and father, B.T. went to Gilbreath's house on other occasions as well. Sometime after these visits, B.T. told a school official that Gilbreath had done something sexually to her. B.T.'s mother testified that B.T. has always maintained that Gilbreath, no one else, sexually abused her.

Scott Webb, a former police detective, testified next. Webb stated that after B.T. reported that she had been sexually abused by Gilbreath and that it had been videoed, an investigation into Gilbreath began. Police obtained a warrant to search Gilbreath's residence for any device that could take, hold, or distribute images or videos.

During the search, police seized an LG cell phone, a computer containing a Western Digital internal hard drive, and a Seagate external hard drive. The Seagate drive was introduced into evidence, and it carried a trade inscription stating that it was a "Product of China" and had been "Assembled in Thailand." R. 57-2 PID 893. Based on this information, Webb testified that the drive must have travelled in interstate or foreign commerce.

Police also took photos of Gilbreath's bedroom and bathroom during the search. His bedroom matched the bedroom shown in a video depicting B.T. engaging in sexually explicit

conduct, and his bathroom matched the bathroom shown in another video also depicting B.T. engaging in sexually explicit conduct.

On cross-examination, Webb was asked if he independently ascertained whether the Seagate drive was manufactured outside of Tennessee. He stated that he had not.

Shane Harrold, a former forensic examiner testified last. He confirmed that the label affixed to Gilbreath's Seagate external hard drive stated that it was a product of China and had been assembled in Thailand. He also stated that he conducted additional research but had been unable to find any record of the drive being manufactured in Tennessee.[1] The Seagate drive contained the video depicting B.T. engaging in sexually explicit conduct in Gilbreath's bathroom, which was copied to the drive on September 6, 2015.

Gilbreath's LG cell phone, which was admitted into evidence, contained a still shot from the bathroom video, showing a man holding his genitals in his hand. The hand, which bore a distinctive mark, appeared in other photos and videos uncovered during the investigation. Additional evidence established that Gilbreath has such a mark on his hand. The phone also contained a thumbnail of the video depicting B.T. engaging in sexually explicit conduct in Gilbreath's bedroom. Metadata showed that this video was made on an LG product on September 12, 2015.

The Western Digital drive—the internal drive from Gilbreath's password-protected computer—was also admitted into evidence. This drive contained the video depicting B.T. engaging in sexually explicit conduct in Gilbreath's bedroom, which was copied to the drive on September 12, 2015. Metadata from a still shot captured from the video revealed that it had been

---

[1] Gilbreath objected to this statement, on the grounds that Harrold was providing expert testimony. The district court overruled the objection, which Gilbreath does not challenge on appeal.

taken at GPS coordinates matching those of Gilbreath's house. The Western Digital drive bore a trade inscription stating that it was a "Product of Malaysia," R. 57-1 PID 892, and Harrold testified that he had found nothing to indicate that the drive was manufactured in Tennessee.

On cross-examination, Harrold was asked if he worked for Seagate or Western Digital or had personal knowledge concerning where the drives were manufactured. Harrold stated that he did not—his knowledge concerning the drives' provenance came from the trade inscriptions affixed to them as well as some additional research conducted on the internet. On redirect, Harrold testified that Gilbreath's LG cell phone had a trade inscription affixed within its battery compartment stating that it was made in China. And on recross, Harrold stated that his knowledge of the cell phone's provenance came from this trade inscription.

At the end of the government's case-in-chief, Gilbreath moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government had not presented sufficient evidence to demonstrate that any device used to produce child pornography had travelled in or affected interstate commerce. He renewed this challenge before closing arguments and again after the jury convicted him, when he also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33.[2] The district court denied Gilbreath's motions, and Gilbreath timely appealed.

---

[2] Gilbreath also challenged the sufficiency of the evidence as to whether he was the man in the videos sexually exploiting B.T. for the purpose of producing a visual depiction of the exploitation, and he did so again at the close of evidence and when moving for a judgment of acquittal and a new trial after he had been found guilty. On appeal, however, he makes no such challenge and thus we take him to concede that the government sufficiently proved one of § 2251(a)'s two elements. *See United States v. Lively*, 852 F.3d 549, 552 (6th Cir. 2017) (outlining the two elements of the offense).

Additionally, Gilbreath mounts no challenge in his opening brief (or reply) regarding the district court's conclusion that the jury's verdict was not against the manifest weight of the evidence and, thus, that the interests of justice did not demand a new trial. Instead, Gilbreath takes specific aim at the sufficiency of the evidence regarding the interstate-commerce element, and he references only the sufficiency-of-the-evidence standard of review, which is not the standard we employ when reviewing a court's denial of a motion for a new trial. *See United States v. Hughes*,

## II.

Gilbreath raises two issues on appeal: (1) whether the evidence presented at trial regarding § 2251(a)'s interstate-commerce element was sufficient to prove his guilt beyond a reasonable doubt;[3] and (2) whether the district court's exclusion of certain evidence deprived him of the constitutional right to present a complete defense. We address each in turn.

## A.

We review a sufficiency-of-the-evidence challenge de novo. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). We will disturb the jury's verdict only if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007). When making this determination, we draw "all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (internal quotation marks omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept to support a conclusion." *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015). "Finally, it must be remembered that circumstantial evidence alone can sustain a guilty verdict and . . . [such] evidence need *not* remove every reasonable hypothesis except that of guilt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (internal quotation marks omitted). "This standard is a great obstacle to overcome." *Id.*

---

505 F.3d 578, 592–93 (6th Cir. 2007). Thus, we understand Gilbreath to have abandoned any separate challenge to the district court's denial of his Rule 33 motion.

[3] Gilbreath presents this issue in two parts, arguing that the government failed to prove this element beyond a reasonable doubt and, as a result, he was deprived of his right to due process. However, it is the Due Process Clause of the Fifth Amendment, itself, that "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Thus, we consider the two parts as one.

Gilbreath's argument is straightforward: the government cannot rely solely on trade inscriptions to prove that a device used to produce child pornography "ha[s] been mailed, shipped, or transported in or affecting interstate or foreign commerce," 18 U.S.C. § 2251(a). At best, Gilbreath contends, such inscriptions prove that the devices travelled in interstate or foreign commerce by a preponderance of the evidence, which is insufficient. He asserts that the government must introduce direct evidence of a device's provenance, e.g., by means of a witness with personal knowledge of where the device was manufactured. We disagree.

First, as mentioned, circumstantial evidence alone is sufficient to sustain a guilty verdict. *Hughes*, 505 F.3d at 592. There is no requirement that the government prove an element of an offense by direct evidence, such as personal knowledge or detailed tracing of a device's provenance.[4] *See United States v. Saguil*, 600 F. App'x 945, 947 (5th Cir. 2015) (per curiam) ("[E]ven if the inscription were circumstantial physical evidence . . . the manufacturer's inscription would be sufficient to show the requisite nexus with interstate commerce.").

Second, we previously concluded that the government had sufficiently satisfied § 2251(a)'s interstate-commerce element by introducing into evidence a memory card used to produce child pornography because the card "bore a trade inscription stating, 'Made in China.'" *United States v. Lively*, 852 F.3d 549, 564 (6th Cir. 2017). We so concluded even though "China" was not mentioned once at trial; the government erroneously hinged its interstate-commerce theory on another device, a hard drive, which was not used by the defendant to produce child pornography; and the memory card was introduced as evidence for reasons unrelated to satisfying § 2251(a)'s

---

[4] We also note that trade inscriptions are considered inherently trustworthy and require no further evidence of authenticity, Fed. R. Evid. 902(7), and that trade inscriptions indicating foreign origin are regulated under federal law, *see* 19 U.S.C. § 1304. "Common sense, too, suggests a low probability that someone would stamp 'Made in China [or Thailand or Malaysia]' on a device made in the United States" or Tennessee. *United States v. Burdulis*, 753 F.3d 255, 263 (1st Cir. 2014). All of this undermines Gilbreath's argument that direct evidence is needed to confirm the accuracy of a trade inscription.

interstate-commerce requirement. *Id.* at 557–59. We did so because the government is not required to connect the dots for the jury; rather, so long as no limiting instruction is given, it is enough to simply introduce into evidence a device with a trade inscription to show that it travelled in interstate or foreign commerce. *Id.* at 564–65.

Here, the government did even more. First, it introduced the cell phone and the two hard drives into evidence, with no limiting instructions, and the devices bore trade inscriptions stating that they were either products of or assembled in China, Malaysia, and Thailand. The government then explicitly connected the dots for the jury by having Webb and Harrold testify as to the devices' origins (again, China, Malaysia, and Thailand), with Webb specifically stating that the Seagate drive travelled in interstate or foreign commerce. Finally, Harrold testified that he had found no sign, on the devices or the internet, indicating that the devices had been manufactured in Tennessee. Given that this evidence surpassed the evidence offered in *Lively*, a rational trier of fact could have found, beyond a reasonable doubt, that the devices used by Gilbreath to produce child pornography had travelled in or affected interstate or foreign commerce.

Thus, we conclude that the government presented sufficient evidence of § 2251(a)'s interstate-commerce element.

**B.**

We review a district court's evidentiary rulings for an abuse of discretion.[5] *United States v. Kettles*, 970 F.3d 637, 642 (6th Cir. 2020). A court abuses its discretion if it made "errors of

---

[5] We note that we review all evidentiary-ruling challenges, including constitutional challenges, under the abuse-of-discretion standard because it "is not at odds with *de novo* interpretation of the Constitution inasmuch as [a] district court does not have the discretion to rest its evidentiary decisions on incorrect interpretations of the Constitution." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006).

law or clear errors of factual determination." *United States v. Daneshvar*, 925 F.3d 766, 775 (6th Cir. 2019).

Gilbreath argues that he should have been allowed to ask, on cross-examination, about a prior allegation of inappropriate touching B.T. made against her thirteen-year-old brother and about B.T.'s grandfather's status as a registered sex offender. Gilbreath maintains that this evidence would have allowed him to suggest that either B.T.'s brother or grandfather had committed the charged crimes, not Gilbreath, given that the face of the person sexually exploiting B.T. in the videos is never shown. The exclusion of this evidence, Gilbreath contends, violated his Fifth Amendment right to present a complete defense.

The district court excluded the evidence related to B.T.'s brother on two separate grounds: Rule 412 and, in conjunction with each other, Rules 401, 402, and 403. Rule 412 "excludes only two narrow categories of evidence: (1) 'evidence offered to prove that a victim engaged in other sexual behavior,' and (2) 'evidence offered to prove a victim's sexual predisposition.'" *Kettles*, 970 F.3d at 643 (quoting Fed. R. Evid. 412). Here, Gilbreath sought to direct attention away from himself and towards the brother based on the fact that B.T. had previously alleged that her brother had inappropriately touched her. We doubt that the evidence was properly excluded under Rule 412.[6] *Cf. id.*; *United States v. Willoughby*, 742 F.3d 229, 234 (6th Cir. 2014).

We need not decide that question, however, because the district court excluded both the prior-allegation evidence and the sex-offender evidence on a separate ground, finding that both types of evidence were either irrelevant and therefore inadmissible, or were properly excluded

---

[6] The district court's contrary conclusion was driven by our holding in *United States v. Cardinal*, 782 F.2d 34 (6th Cir. 1986). However, we later recognized that *Cardinal* applied a prior version of Rule 412 and is therefore of limited value with respect to prior allegations of sexual abuse, given that the Rule has been amended three times and substantially rewritten since then. *See Kettles*, 970 F.3d at 643; *United States v. Willoughby*, 742 F.3d 229, 234 (6th Cir. 2014). We also note that if evidence does not fall within the scope of Rule 412, there is no need to move for its admission under that rule. *See Willoughby*, 742 F.3d at 234–35.

because the minimal probative value of the evidence was substantially outweighed by the potential to introduce unfair prejudice or mislead the jury.

Rule 401 states that evidence is relevant and generally admissible if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402. Here, when deciding whether the proffered evidence was relevant, the district court largely focused on the fact that Gilbreath could offer no additional evidence to connect either B.T.'s brother or grandfather to the videos. The district court concluded that without this additional evidence, the proffered evidence lacked relevance.

Even assuming that the proffered evidence had some minimal relevance, we agree with the district court that the probative value of the proffered evidence was marginal. A prior allegation of inappropriate touching by B.T.'s thirteen-year-old brother has little relevance to the visual depictions of an adult male engaging in sexually explicit conduct with a child. Also of marginal relevance is B.T.'s grandfather's statutory-rape conviction for having sexual relations with an unrelated teenager that happened, presumably, decades ago. Given the marginal probative value of the proffered evidence, the district court concluded that it was substantially outweighed by the danger of unfairly prejudicing the jury as to other members of B.T.'s family who were to testify and the danger of misleading the jury by focusing its attention on events wholly unrelated to the sexual abuse depicted in the videos. The district court therefore excluded the evidence under Rule 403. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury . . . .").

The Constitution "permits judges to exclude evidence that is . . . only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues[,]" as is the case when

evidence is introduced to suggest someone else committed the charged crimes but is "so remote," "speculative," or "lack[s] such connection with the crime" that it "does not sufficiently connect the other person to the crime." *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006) (internal quotation marks omitted) (citations omitted). Such is the case here—Gilbreath could merely insinuate that it was the brother or the grandfather in the videos and, even then, could do so based only on evidence lacking sufficient connection to the charged crimes. Thus, the district court had a legitimate basis to exclude the proffered evidence under Rule 403 and did not violate Gilbreath's right to present a complete defense. *See United States v. Givhan*, 740 F. App'x 458, 464 (6th Cir. 2018).

Moreover, even if we assume that the district court abused its discretion in this regard, its "decision will not be disturbed if substantial injustice did not result." *United States v. Cleveland*, 907 F.3d 423, 436 (6th Cir. 2018) (internal quotation marks omitted). "[A]n abuse of discretion that does not affect substantial rights is harmless error and is to be disregarded." *Gibson v. United States*, 271 F.3d 247, 254 (6th Cir. 2001), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). That leaves the question whether the error was harmless, i.e., whether the error made no difference to the verdict. *See Kettles*, 970 F.3d at 643–45.

The evidence against Gilbreath was overwhelming. B.T. named him as the person sexually abusing her in the videos. Her mother testified that B.T. never said otherwise. The videos were shot on Gilbreath's cell phone and then copied onto his hard drives. The metadata from a still photo taken from one of the videos revealed GPS coordinates matching Gilbreath's house. The bedroom and bathroom shown in the videos matched Gilbreath's bathroom and bedroom. The person in the videos was an adult male, not a teenage boy or an elderly man. The adult male

sexually exploiting B.T. in the videos had a distinctive mark on his hand that matched a mark on Gilbreath's hand.

The force of this evidence would not have been disturbed by the prior-allegation or sex-offender evidence, both of which had hardly any probative value and did not connect either B.T.'s brother or grandfather to the videos or to Gilbreath's house.  Thus, the exclusion of this evidence made no difference to the verdict.

* * *

For the foregoing reasons, we AFFIRM Gilbreath's judgment of conviction.